**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 5, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2024AP1291
                2024AP1292
STATE OF WISCONSIN**

Cir. Ct. No.  2024TR215
              2024TR450

**IN COURT OF APPEALS
DISTRICT IV**

---

CITY OF PLATTEVILLE,

    PLAINTIFF-APPELLANT,

  V.

TRAVIS JON KNAUTZ,

    DEFENDANT-RESPONDENT.

---

APPEALS from orders of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed.*

¶1      BLANCHARD, J.[1]   The City of Platteville appeals a circuit court order granting Travis Knautz's motion to suppress all of the evidence that police

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

obtained following an investigatory traffic stop, or *Terry* stop, of a car that Knautz was operating.[2] The City used this evidence to pursue two drunk driving forfeiture violations against Knautz. The court ruled that the City failed to show that there was reasonable suspicion for the stop and therefore the Fourth Amendment was violated. The City argues that it proved reasonable suspicion. I agree with Knautz and accordingly affirm.

## BACKGROUND

¶2    The only witness at the suppression hearing was the police sergeant who made the traffic stop. The circuit court appeared to fully credit the sergeant's description of events. Neither party argues that the court clearly erred in any aspect of its fact finding. The sergeant testified in pertinent part as follows.

¶3    At the time of the hearing, the sergeant had approximately 14 years of police experience with the City.

¶4    One Friday night in January 2024, the sergeant was on duty and performing a "general patrol" in Platteville. He was driving an unmarked gray sport utility vehicle. At about 11:50 p.m., while sitting in this vehicle at a traffic light at the intersection of East Mineral Street and Business Highway 151, the sergeant took notice of a parked car. More specifically, the sergeant looked east, across the parking lot of an auto parts shop, to a car located in the parking lot of a chiropractic business beyond the auto parts shop. The car was properly parked in

---

[2] *See* **Terry v. Ohio**, 392 U.S. 1 (1968) (setting forth an exception to the Fourth Amendment warrant requirement that can allow an officer, under limited circumstances, to stop a person without a warrant or probable cause); WIS. STAT. § 968.24 ("[A] law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime ….").

a parking stall on the "front side" of the chiropractic business—*i.e.*, on the western side of the business, at a spot within sight of vehicles passing on the highway. The headlights and tail lights of the car were on, but not its interior lights, and its engine was running.

¶5 There did not appear to be any lights on inside the building housing the chiropractic business. The chiropractic business is "attached to a financial services business." The sergeant knew that the building was not "normally open" at that time of night.

¶6 From his original vantage point at the light-controlled intersection, the sergeant watched the parked car for about one minute. There appeared to be one person in the car. The person appeared to be in the driver's seat and was "moving around," although the sergeant "could not tell what they were doing." The sergeant did not observe this person holding anything, such as a tool that could be used in a break-in or to vandalize. At no time did the sergeant see any person outside the car, nor did he see a door of the car open.

¶7 After the initial minute of observation, the sergeant drove across the highway and pulled into the parking lot of a commercial business directly across the highway from the chiropractic business. The sergeant did this with the purpose of "parking there for maybe a few more minutes to see if I could see anybody coming in or out of" the chiropractic business. As the sergeant entered this parking lot he turned off the headlights of his unmarked sport utility vehicle. Also as the sergeant entered the lot, the car he was keeping track of across the highway backed out of the stall that it had been parked in and headed toward a

3

highway ramp.[3]  The sergeant proceeded to drive toward the car and then pulled it over on the highway ramp.  Knautz was the driver.[4]

¶8    At no time did the sergeant observe Knautz engage in any irregular or illegal driving behavior.

¶9    The chiropractic business had a "back lot," separate from where the sergeant initially observed the car parked.  Unlike the area where the sergeant first observed the parked car, the back lot was not next to the highway, which sees "a fair amount of traffic" at around midnight on a Friday.

¶10    The circuit court aptly summarized the core relevant facts that preceded the traffic stop as follows:

> [I]t's 11:50, ten minutes to midnight on a Friday night.  The Officer's on routine patrol, [and] spots this vehicle in [the] chiropractic parking lot.  The vehicle has its lights on.  It appears, from the Officer's observations, to be running.  It sits there about a minute.  The driver's moving around, but other than that, there really isn't anything happening.  [The car] catches the Officer's eye.
>
> The Officer decides to get a vantage point to surveil the vehicle.  As he's driving around into the parking lot of the [commercial space across the highway] with his headlights off, the vehicle backs out and pulls away.

---

[3] The sergeant testified to the perception that, "as soon as I entered the parking lot across the road from it, [the occupants of] the vehicle decided that they wanted to leave," which he testified added to his suspicion of possible criminal activity.  But the circuit court found that, given the undisputed testimony about the sergeant's activities in the unmarked SUV relative to the car that he decided to surveil, that perception was not "well-founded."  On appeal, the City concedes that the sergeant could not reasonably have considered the timing of the car's departure from its original parking spot relative to his movements in his unmarked SUV as a fact counting toward reasonable suspicion.  I do not address this concept further.

[4] Events that occurred after the stop produced the evidence that was used by the City to pursue two drunk driving forfeiture violations against Knautz.  Those events are not pertinent to any issue in this appeal.

¶11     I now summarize evidence and findings of the circuit court on one topic that the State attempted to develop at the hearing. The City sought to advance the proposition that the chiropractic business was located in an area in which break-ins and other property crimes were especially common at the time of the traffic stop here. The sergeant testified that, in preparation for the hearing, counsel for the City asked the sergeant to compile a list from police records of "burglary, thefts, or damage to … property for businesses along [the] business Highway 151 corridor" that had occurred over the 14 years that the sergeant had served with the police department. Although the sergeant implied that he had complied with this request by creating such a list, none was offered as evidence or discussed in detail by anyone. The sergeant responded "yes" to the following question:  "[W]ithout counting all of them specifically … over [the 14 years] you've investigated something … over 20 to 30 different of these occurrences"? The sergeant also testified that he was not aware of the chiropractic business itself ever being the target of a break-in or other property crime.

¶12     The sergeant was not asked to define how many businesses, or how much real estate, constitutes the Business Highway 151 corridor (*e.g.*, how far the "corridor" he was referring to might extend in any direction away from the highway). He was also not asked to testify as to whether, at the time of the stop, he was aware to what extent any of these prior offenses occurred near the chiropractic business as opposed to other areas of the corridor, nor was he asked

how many of these 20 to 30 offenses might have occurred within the previous year or two.[5]

¶13    By way of findings on this topic, the circuit court said that the phrase "high crime area" to describe the Business Highway 151 corridor is "probably … a little too bold."  The court went on to acknowledge, however, that within the area to which the sergeant appeared to be referring there "is a concentration of property crimes versus other places in the city, perhaps because it's where the money's at."  Put differently, the court said, "it is an area that merits attention that other areas of Platteville don't merit."[6]

¶14    After the City pursued drunk driving forfeitures against Knautz based on the evidence obtained following the traffic stop, he filed a motion to suppress all evidence obtained from the traffic stop.  His argument was that, under the "totality of the circumstances," "a reasonable officer" in the position of the sergeant would not "suspect that Knautz was engaged in or about to engage in criminal activity."  The City called the sergeant as a witness at the hearing in an attempt to show that reasonable suspicion existed at the time of the stop.  The circuit court granted the motion to suppress, based on its determination that the totality of the circumstances did not provide a sufficient basis to suspect that crime was afoot when the sergeant stopped the car and seized Knautz.  The City appeals.

---

[5] During argument to the court at the hearing, defense counsel said that Business Highway 151 "extends several miles through Platteville," but no one at the hearing was more specific than that about what the corridor consists of.

[6] No evidence was presented at the hearing on the topic of rates of recent property crimes in areas of Platteville *outside* the Business Highway 151 corridor, and neither the circuit court nor either party purported to characterize the rates.

**DISCUSSION**

¶15    On appeal, the City argues that it carried its burden of showing that the sergeant had reasonable suspicion to conduct the investigatory stop and therefore he did not violate Knautz's Fourth Amendment rights.  I disagree.

¶16    Appellate courts review orders granting or denying motions to suppress evidence as issues "'of constitutional fact.'"  ***State v. Howes***, 2017 WI 18, ¶17, 373 Wis. 2d 468, 893 N.W.2d 812 (quoted source omitted).  This creates "'a two-step inquiry.'"  ***Id.*** (quoted source omitted).  "First, we will uphold the circuit court's findings of fact unless they are clearly erroneous," and "[a] finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."  ***State v. Anderson***, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285.  "Second, we review the application of constitutional principles to those facts independently of the decision[] rendered by the circuit court ...."  ***Id.***

¶17    A ***Terry*** stop, "complies with the Fourth Amendment 'if the police have reasonable suspicion that a crime has been committed, is being committed, or is about to be committed.'"  ***State v. Genous***, 2021 WI 50, ¶7, 397 Wis. 2d 293, 961 N.W.2d 41 (quoted source omitted).  "Reasonable suspicion requires that a police officer possess specific and articulable facts that warrant a reasonable belief that criminal activity is afoot."  ***State v. Young***, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729.  "While it is a low bar, a mere hunch is insufficient."  ***Genous***, 397 Wis. 2d 293, ¶8.  Reasonable suspicion is determined "based on the totality of the circumstances," with the "focus not on isolated, independent facts, but on 'the whole picture' viewed together."  ***Id.***, ¶9 (quoted source omitted).  The State bears the burden of proving that an investigative stop was a constitutional seizure of the

7

person. *See State v. Blatterman*, 2015 WI 46, ¶17, 362 Wis. 2d 138, 864 N.W.2d 26.

¶18    Considering the totality of the circumstances, I conclude that the City failed to clear the "low bar" of reasonable suspicion and instead relied on what was, at most, "a mere hunch" by the sergeant regarding the possibility of an active or imminent break-in or other property crime. *See Genous*, 397 Wis. 2d 293, ¶8.    That is, the evidence regarding events leading up to the stop fails to establish articulable facts, and rational inferences from those facts, that could have led a reasonable officer in the sergeant's position to suspect that any occupant of the car had engaged in criminal activity, was currently doing so, or was about to do so.[7]  *See Young*, 294 Wis. 2d 1, ¶21.

¶19    The sergeant observed, from a fair distance in the dark, a car with its headlights on and its engine running at a closed business next to a well-traveled road at around midnight on a Friday.  The car was properly parked in a parking space and there was no one around the car or getting in or out of it.[8]  It was not parked in the back lot area, which the driver might have done if a goal was to stay generally out sight.  Indeed, on the topic of visibility, one would not ordinarily expect someone who was planning, engaging in, or just engaged in, a break-in or vandalism to sit in a car with the headlights on next to a well-traveled road.  As to the one occupant of the car noticed by the sergeant, the sergeant did not see this

---

[7]  I say "any occupant," because, as it turned out, the sergeant learned in the course of the stop that there was a passenger in the car with Knautz.  But there is no dispute that the sergeant was not aware of the second occupant before the stop and in any case it would not have made a difference in resolving the issue in this appeal.

[8]  There was no testimony that parking the car in front of the chiropractic business at that hour violated a local ordinance or was contrary to any visible posting on the property.

person do anything unusual, much less potentially suspicious, while the car was parked, or at any time before the stop.

¶20     The City rests almost entirely on its summaries of three unpublished opinions of this court as purported persuasive authority.  *See **State v. Able***, No. 2009AP2777-CR, unpublished slip op. (WI App Apr. 14, 2010); ***State v. Beckman***, No. 2010AP2564-CR, unpublished slip op. (WI App June 29, 2011); ***State v. Parker***, No. 2012AP245-CR, unpublished slip op. (WI App July 12, 2012).  In each of these opinions, this court determined that reasonable suspicion existed.  The City asserts that the facts cited by this court in these opinions approximate the facts here.  It is true that some facts referenced in the three opinions at least generically resemble some facts here.  But the City's arguments resting on these opinions are unavailing because the facts in none of the three cases are overall comparable to the facts here, and therefore this authority is not persuasive for purposes of this appeal.

¶21     The following are notable differences.  In two of the three, unlike in this case, this court suggested that the subjects of the seizures had either parked near a business, or else parked in a well-defined area, that had relatively recent histories of break-ins known to the investigating officer.  *See **Able***, No. 2009AP2777-CR, ¶7 ("a previous break-in at the fitness club and … [police were] investigating several burglaries to a sister fitness club"); ***Beckman***, No. 2010AP2564-CR, ¶¶2-3, 12 (officer testified that "we've had burglaries in the small businesses" in the Village of Mukwonago; court refers to the officer's "knowledge that there had been reports of burglaries of small businesses in the area").  In the third, the investigating officer observed a person drive into a closed tire repair shop at 3:02 a.m., after which the officer then discovered that this person had entered a pickup truck in the repair shop, with the door of the truck

open, and no one else was around—raising the obvious reasonable inference that the person was attempting to steal something from the truck or the truck itself. *See Parker*, No. 2012AP245-CR, ¶¶3-8.

¶22 Beyond summarizing the three opinions, the following is the City's argument:

> [The sergeant] testified that it was unusual to see a vehicle at the [chiropractor's business] after hours. He testified that he was aware of twenty to thirty burglaries, or other related matters, in his fourteen years as a law enforcement officer in the City. The time of day on a Friday night was factored into his decision ….

¶23 It is certainly true that an officer in the sergeant's position could reasonably entertain a professional interest in the parked car, because it was not usual to see a car parked at this closed business at midnight. The Fourth Amendment would not have prevented the sergeant from surveilling, following on public roadways, or approaching the car to satisfy any concern or curiosity, so long as he did not effect a seizure. *See, e.g.*, ***County of Grant v. Vogt***, 2014 WI 76, 356 Wis. 2d 343, 850 N.W.2d 253 (concluding that a police encounter with the driver of a parked vehicle did not constitute a seizure under the Fourth Amendment). But it would be a leap to go from what made the circumstances here "unusual" to anything resembling the specific and articulable facts warranting a reasonable belief that criminal activity was afoot. The City fails to develop an argument to the contrary.

¶24 Turning back to the sergeant's limited references to the prevalence of property crimes in the area, this court has discussed whether a person's "presence in a high-crime area could … be a significant aspect of the 'reasonable suspicion' calculus." *See **State v. Gordon***, 2014 WI App 44, ¶15, 353 Wis. 2d

468, 846 N.W.2d 483 (discussing concerns about use of a "high crime area" reputation in the reasonable suspicion context). But I need not delve into the nuances of that issue for the following reasons.

¶25 The sergeant's testimony on this issue constituted evidence weaker than the evidence of recent, localized break-ins that was present in *Able* and *Beckman*. Here, an average of approximately two break-ins or other property crimes per year occurred at undetermined times over the course of 14 years at undetermined spots along a "corridor" of undefined dimensions and nature. Further, as noted, the circuit court found only that, based on this record, the corridor "merits attention" by police for potential property crimes, at least compared to other areas of the City. The best argument available to the City on this record is the following. The sergeant could have reasonably believed at the time of the stop that the chiropractic business was within an area that experiences higher property crime rates compared to other areas of the City, and that this counts to a small degree in favor of reasonable suspicion of a possible property crime. Assuming without deciding that this factor counts in favor of reasonable suspicion, it would not tip the scales based on the totality of the circumstances. The City fails to develop an argument to the contrary.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

11